## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| Tri-Valley corporation, et al.[1], | |
| Debtor. | Case No.: 12-12291 (MFW) |
| | (Jointly Administered) |
| CHARLES A. STANZIALE, JR., in his capacity as the Chapter 7 Trustee of Tri-Valley Corporation, et al., | |
| Plaintiff, | |
| v. | Adv. Pro. No.: 14-50448 (MFW) |
| Estate of Lawrence R. Stafford, | |
| Defendant. | |

**DEFENANT'S MOTION TO DISMISS PURSUANT TO F.R.B.P. 7012(B)(6) ADVERSARY COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AMD 550 AND TO DELAY OR DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

## INTRODUCTION

This motion is necessitated by the Plaintiff/Trustee filing of a preference action relating to payments made by the Debtor on a lease that was assumed by Debtor during the Chapter 11 proceedings.  Essentially, the Trustee is attempting to obtain funds paid on the lease within 90 days of the bankruptcy filing in August 2012.  As noted herein, that is not permitted, and the Motion to Dismiss should be granted without leave to amend.

The order authorizing and approving the sale of assets free and clear of liens, claims,

---

[1]    The Debtors in these cases are: Tri-Valley Corporation, Tri-Valley Oil & Gas, Co., and Select Resources Corporation, Inc.

encumbrances and interests as well as approving the assumption and assignment of designated executor contracts and unexpired leases was filed October 18, 2012, as D.I. 268. For the Court's convenience, a copy of that Order without exhibits is attached as Exhibit A. The Estate of Lawrence R. Stafford, listed as the Defendant here, was actually Mary Ann Stafford, Trustee of the Fighting Dragon Trust Dated May 8, 2002.

The assumption and assignment of the oil lease in Bakersfield, California, while quite valuable to the Debtors, was in substantial dispute because of numerous breaches by the Debtor pre-petition. The Court's docket will reflect numerous filings over this, as well as references to the fact that the monthly payment was $10,000.00. The underlying transactions in the Bankruptcy Court are referenced on the docket as D.I. 133, 135, 203 (Motion to Appear Pro Hac Vice (Richard J. Reynolds)), 221 (Objection to Mary Ann Stafford, Trustee of the Fighting Dragon Trust), 234 (Adversary Case 12-50943 – complaint by Mary Ann Stafford re validity, priority or extent of lien or other interest in property), 243 (reply of Tri-Valley Oil & Gas Co.), 244 (Declaration In Support of Reply), and 245 (Motion for Leave to File Reply). In summary, the Order approving the transaction, D.I. 268, was the result of a compromise between the parties whereby the lease terms were changed and all cure payments were made. Now the Trustee seeks to recover as preferential transfers three months' worth of pre-petition payments. That is simply not permitted under the case law.

As a matter of law, this Complaint cannot be sustained pursuant to the authority set forth in *In Re Kiwi International Airlines, Inc.*, 344 F.3d 311 (3rd Cir. 2003). Under 11 U.S.C. § 547(b)(5), this cannot be a preferential transfer.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is proper if the pleadings failed to allege enough facts so as to demonstrate a plausible entitlement

IRV #4847-5551-6190 v1

to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 553-558 (2007).  For a complaint to survive a motion to dismiss, the non-conclusory "factual content" and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief.  *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  This Complaint is not capable of being amended, and therefore, the motion should be granted without leave to amend.

Moving party agrees that this is a core proceeding and that the Court may enter final relief.

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendant respectfully requests that the Court dismiss the Complaint without leave to amend.

Dated:  September 10, 2014                              Respectfully submitted,

BURKE, WILLIAMS & SORENSEN, LLP

Richard J. Reynolds
California State Bar No. 89911
Burke, Williams & Sorensen, LLP
1851 East First Street, Suite 1550
Santa Ana, CA 92705
(949) 863-3363


/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange Street, 7th Floor
Wilmington, DE 19801-1186
(302) 573-2525
dfinger@delawgroup.com

Attorneys for defendant

- 3 -

# Exhibit A

IRV #4847-5551-6190 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TRI-VALLEY CORPORATION, *et al.*,[1] | Case No. 12-12291 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Ref. Nos. 51, 115, 130, 133, 218, 221, 230, 232, 243, 244** |

## ORDER AUTHORIZING AND APPROVING (A) THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF DESIGNATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (C) GRANTING RELATED RELIEF

### (EDISON ASSETS)

Upon the Motion dated August 13, 2012 [Docket No. 51] (the "Sale Motion") of Tri-Valley Corporation ("Tri-Valley"), Tri-Valley Oil & Gas Co. ("TVOG"), Select Resources Corporation, Inc. ("Select") and TVC Opus I Drilling Program L.P. ("Opus" and collectively with Tri-Valley, TVOG, and Select, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 cases (the "Bankruptcy Cases"), for entry of an order pursuant to Sections 105, 363, 365, 503 and 507 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 6003, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i) authorizing and approving the sale of certain of the Debtors' assets by public auction free and clear of liens, claims, encumbrances, and interests, (ii) approving the assumption and

---

[1] The Debtors in these Bankruptcy Cases, along with the last four digits of each Debtor's federal tax identification number, are Tri-Valley Corporation (5250), Tri-Valley Oil & Gas Co. (7433), Select Resources Corporation, Inc. (0386), and TVC Opus I Drilling Program L.P. (0334). The Debtors' corporate headquarters and the mailing address for each Debtor is 4927 Calloway Drive, Bakersfield, CA 93312.

assignment of certain designated executory contracts and unexpired leases, and (iii) granting

related relief; and

This Court having entered orders dated August 30, 2012 [Docket No. 115] (the "Contract

Procedures Order") and September 5, 2012 [Docket No. 130] (the "Bidding Procedures Order"

and together with the Contract Procedures Order, the "Sale Procedures Orders"): (i) approving

procedures for the sale of the assets and assumption and assignment of the contracts and leases

contemplated by the Sale Motion (the "Sale Procedures"), (ii) scheduling a hearing to consider

approval of the Sale Motion (the "Sale Hearing"), and (iii) approving the form and manner of

notice thereof; and

The Debtors: (i) having given notice by mail of the Sale Procedures and the date and the

time of the Sale Hearing, and (ii) having published notice of the Sale Motion, the Sale

Procedures, and the Sale Hearing in the national edition of the Wall Street Journal, in each case

as demonstrated by the affidavits of service filed with the Court before the Sale Hearing.

**NOW, THEREFORE**, based upon consideration of the Sale Motion, and the relief

requested therein, all of the evidence, including affidavits, proffered or adduced at the Sale

Hearing, memoranda, objections and arguments of counsel in connection with the Sale Hearing,

and upon the entire record of the Sale Hearing and this Bankruptcy Case; and after due

deliberation thereon; and good cause appearing therefor;

**THE COURT HEREBY FINDS AND DETERMINES THAT**:

A.      The findings and conclusions set forth herein constitute the Court's findings of

fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this

proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law

announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby

incorporated herein to the extent not inconsistent herewith.  To the extent that any of the

following findings of fact constitute conclusions of law, they are adopted as such.  To the extent

any of the following conclusions of law constitute findings of fact, they are adopted as such.

 B. This Court has jurisdiction to hear and determine the Sale Motion and over the

property of the Debtors' estates pursuant to 28 U.S.C. §§ 157 and 1334(a), and this matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue of these Bankruptcy

Cases and the Sale Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

 C. Tri-Valley and TVOG (together as the "Sellers") conducted an auction for the oil

and gas properties located in and around the Edison Oil Field near Bakersfield, California in

which the Sellers hold fee and leasehold interests (the "Edison Assets") on October 17, 2012

(the "Auction"); and Naftex Development LLC (the "Purchaser") submitted the highest and best

Bid (the "Prevailing Bid") for the Purchased Assets at the Auction pursuant to the Asset

Purchase Agreement attached hereto as <u>Exhibit A</u> (the "APA").[2]

 D. At the Auction, the Sellers also selected Hathaway LLC as the Back-Up Bidder

on the terms set forth in the Back-Up Bid.

 E. The Sale Hearing was held before this Court on October 18, 2012, at which time

the Debtors sought approval of the Purchased Assets to the Purchaser pursuant to the APA (the

"Sale") and all parties in interest were afforded an opportunity to be heard with respect to the

Sale; and the Court has reviewed and considered the Sale Motion and any objections thereto,

and related pleadings, and has heard testimony and arguments of counsel and received evidence

with respect to the Sale.

 F. This Court finds that the Purchased Assets constitute property of the Sellers'

---

[2] Terms utilized but not otherwise defined herein shall have the same meanings as ascribed to them in the APA and the Sale Procedures Orders.

(a) counsel to the DIP Lender; (b) counsel to the Creditors' Committee and Equity Committee; (c) any party that expressed in writing to the Debtors or FTI an interest in acquiring the Assets; (d) non-Debtor counterparties to all Potential Designated Contracts; (e) all parties who are known to assert liens upon the Assets; (f) the Securities and Exchange Commission; (g) the Internal Revenue Service and applicable state and local taxing authorities; (h) all applicable state attorneys general, local environmental enforcement agencies and local regulatory authorities; (i) the U.S. Trustee; (j) the Federal Trade Commission; (k) the United States Attorney General/Antitrust Division of Department of Justice; (l) the U.S. Environmental Protection Agency and similar state agencies; (m) the United States Attorney's Office; and (n) all entities that have requested notice in these Bankruptcy Cases under Bankruptcy Rule 2002.

L.    The Debtors published notice of the Sale, the Sale Motion, the Sale Procedures, and the Sale Hearing in the national edition of the Wall Street Journal. With regard to parties that have Encumbrances (as defined below), against or in the Debtors and/or the Purchased Assets, but whose identities are not known by the Debtors, the Court finds that such publication notice is sufficient and reasonably calculated under the circumstances to reach such parties.

M.    Other parties interested in bidding on the Purchased Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets.

N.    The disclosures made by the Debtors concerning the Sale, the Sale Motion, the Sale Procedures Orders, the Sale Procedures and the Sale Hearing were complete and adequate.

## Highest and Best Offer

O.    The Sale Procedures afforded a full, fair and reasonable opportunity for any Person to make an offer to purchase the Purchased Assets, and no offer that is higher or better

estates, and title thereto is vested in the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.

G.    The statutory predicates for the relief requested herein and the bases for approval include Sections 105, 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014, and Local Rule 6004-1.

### Notice of Sale, Orders, and Sale Procedures

H.    On August 7, 2012 (the "Petition Date"), the Debtors commenced their Bankruptcy Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases. The Debtors are operating their respective businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

I.    On September 28, 2012, the Court entered the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (A) Authorizing Post-Petition Financing, (B) Authorizing Use of Cash Collateral, (C) Granting Adequate Protection, and (D) Granting Related Relief (the "Final DIP Order") [Docket No. 201].

J.    As evidenced by the affidavits of service and publication previously filed with this Court, proper, timely, adequate and sufficient notice of the Sale, the Sale Motion, and the Sale Hearing has been provided by the Debtors in accordance with Sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9014 and 9019, and Local Rule 6004-1, and as required by the Sale Procedures Orders, and no other or further notice of the Sale Procedures Orders, the Sale, the Sale Motion or the Sale Hearing is or shall be required.

K.    A reasonable opportunity to object or be heard regarding the Sale Motion and the relief requested in the Sale Motion has been afforded to all interested Persons, including

than the Sale to the Purchaser pursuant to the APA has been made. The Debtors conducted the sale process, including the solicitation and evaluation of competing bids and the conduct of the auction, in all respects in compliance with and in accordance with the Sale Procedures and Sale Procedures Orders. The auction process was duly noticed and conducted in a non-collusive, fair and good manner. The Purchaser participated in the auction process and complied with the Sale Procedures and Sales Procedures Orders.

P.      The Debtors and their professionals have complied in good faith with the Bidding Procedures Order in all respects. As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing and representations of counsel made on the record at the Sale Hearing, the Sellers (i) have diligently and in good faith marketed the Purchased Assets, (ii) afforded interested potential purchasers a full, fair, and reasonably opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Sellers' assets, (iii) provided potential purchasers, upon request, sufficient information to make an informed judgment on whether to bid on the Purchased Assets, and (iv) considered all Qualified Bids submitted on or before the Bid Deadline.

Q.      The offer of the Purchaser, upon the terms and conditions set fort in the APA, including the form of total consideration to be realized by the Debtors, (i) constitutes the highest and best offer obtained for the Purchased Assets, (ii) is fair and reasonable consideration for such Purchased Assets, (iii) is in the best interests of the Debtors' estates, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, all states, territories and possessions thereof and the District of Columbia.

R.    The Bid Procedures set forth in the Bid Procedures Order were non-collusive and followed in good faith, and were substantially and procedurally fair to all parties. The Purchaser is the Successful Bidder for the Purchased Assets in accordance with the Bidding Procedures Order. The Bid Procedures enabled the Debtors to obtain the highest and best value for the Purchased Assets for the Debtors and their estates.

S.    The Sellers have the full corporate power and authority to execute the APA and all other documents contemplated thereby, and the Sale of the Purchased Assets has been duly and validly authorized by all necessary corporate authority by the Sellers to consummate the transactions contemplated by the APA. No consents or approvals, other than as may be expressly provided for in the APA, are required by the Sellers to consummate the Sale.

### Best Interests of Debtors and their Estates, Creditors, and Equity Holders

T.    The Debtors have demonstrated and proven to the satisfaction of this Court that approval of the APA and consummation of the Sale at this time are in the best interests of the Debtors, their estates, creditors, equity holders, and all other parties in interest in these bankruptcy cases, and that the Sale represents a prudent and good faith exercise of the Debtors' business judgment. The Debtors have articulated good, sufficient and sound business justification and compelling circumstances for a sale of the Purchased Assets pursuant to Section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization in that, among other things:

(1)    The Sale will generate proceeds that, together with the other terms and conditions for the Sale as set forth in the APA, constitute the highest and best offer that the Debtors have received to date for the Purchased Assets, after a diligent and good faith effort to market the Purchased Assets and to solicit competing bids in accordance with the Sale Procedures Orders, and thus maximizes the value realized for the benefit of the Debtors' estates;

(2)     Prompt approval and consummation of the Sale will preserve the viability of the
Purchased Assets as a going concern; and

(3)     Claims against the Debtors' estates will be minimized as a result of the prompt
consummation of the Sale to the Purchaser.

### Section 363(f) Is Satisfied

U.     As a condition to the Sale, the Purchased Assets must be sold free and clear of all

Encumbrances[3] (other than the Permitted Encumbrances), and that the Purchaser must have no

liability for any liabilities or obligations of the Debtors.  The Purchaser would not enter into the

APA or consummate the Sale, thus adversely affecting the Debtors' estates and interfering with

the Debtors' reorganization efforts, if the Sale of the Purchased Assets were not to be free and

clear of all Encumbrances (other than the Permitted Encumbrances).

V.     The Sellers may sell the Purchased Assets free and clear of all Encumbrances

(other than the Permitted Encumbrances),  because, in each case, one or more of the

requirements set forth in Sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.

Those holders of Encumbrances who either failed to object or who withdrew their objections to

the Sale or the Sale Motion are deemed to have consented pursuant to Sections 363(f)(2) of the

Bankruptcy Code.  Those holders of Encumbrances who did object fall within one or more of the

other subsections of Sections 363(f) of the Bankruptcy Code and are adequately protected

because their liens and security interests, if any, attach to the cash proceeds of the Sale

---

[3] For purposes of this Sale Order, "Encumbrances" shall be deemed to refer to, without limitation, any and all liens (statutory or otherwise), claims, hypothecations, Liabilities, security interests, interests, mortgages, pledges, restrictions, charges, instruments, preferences, priorities, security agreements, easements, covenants, encroachments, options, rights of recovery, Taxes (including foreign, federal, state and local Tax), or encumbrances, of any kind or nature (including (a) any conditional sale or other title retention agreement and any lease having substantially the same effect as any of the foregoing, (b) any assignment or deposit arrangement in the nature of a security device, and (c) any leasehold interest or other right, in favor of a third party or the Sellers, to use any portion of the Purchased Assets), whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, known or unknown.

attributable to the Purchased Assets against which or in which they claim an Encumbrance in

accordance with their order of priority and otherwise subject to the provisions of the Final DIP

Order. On the Closing, title to the Purchased Assets shall pass to the Purchaser to the fullest

extent permitted by Section 363(f) of the Bankruptcy Code.

W.     Were the sale of the Purchased Assets not free and clear of all Encumbrances

(other than the Permitted Encumbrances) or if the Purchaser would, or in the future, could

potentially be liable for any such Encumbrances, the Purchaser would not have entered into the

APA and would not consummate the transactions contemplated thereby, which would adversely

affect the Debtors, their estates, creditors, and equity holders.

### Good Faith

X.     The Purchaser is a good faith purchaser under Section 363(m) of the Bankruptcy

Code and, as such, is entitled to the protections afforded thereby in that: (i) the purchase price

being paid by the Purchaser is fair and reasonable because, among other things, the Sale

Procedures Orders required the Debtors to, and the Debtors did, actively seek competing bids

and conduct a thorough and complete auction process for the Purchased Assets, thereby

permitting the Debtors to obtain the highest and best offer for the Purchased Assets, and the

Purchaser did not interfere with any such efforts; (ii) the Purchaser, the Sellers, and their

respective counsel and financial advisors engaged in good faith, arm's length negotiations to

determine the terms and conditions of the APA; and (iii) the Sellers and the Purchaser have

entered into the APA in good faith and without collusion or fraud.

Y.     No party has alleged any conduct that would constitute improper agreements or

conduct under Section 363(n) of the Bankruptcy Code. No party has engaged in any conduct

that would permit the avoidance of the Sale, the recovery of excess value and other costs, fees or

expenses or the imposition of punitive damages pursuant to Section 363(n) of the Bankruptcy Code. The APA was negotiated, proposed and entered into in good faith and in arm's length bargaining position.

## Validity of The Transfers

Z.      Upon the entry of this Sale Order, (a) the Sellers have full corporate power and authority to execute, deliver and perform the APA and all other agreements, instruments and other documents contemplated thereby (the "Transaction Documents") and to consummate the Sale in accordance with the terms and conditions thereof; (b) the execution, delivery and performance by the Sellers of the APA and the other Transaction Documents and the consummation of the Sale have been duly and validly authorized by all necessary corporate action on the part of the Sellers; (c) no consents or approvals, other than those expressly provided for in the APA, are required for the Sellers to consummate the Sale; and (d) any consents and approvals required for assignment of any Purchased Assets have been obtained or are not required under Section 363 of the Bankruptcy Code.

AA.     The Sellers hold or will hold good title to the Purchased Assets as of the Closing and, accordingly, the transfer of the Purchased Assets to the Purchaser (a) will be legal, valid and effective transfers of property of the Sellers' estates to the Purchaser; and (b) will vest the Purchaser with all right, title and interest of the Sellers in and to the Purchased Assets, free and clear of all Encumbrances (other than the Permitted Encumbrances) pursuant to Sections 363(f) and 105 of the Bankruptcy Code.

BB.     The Debtors have exercised their reasonable business judgment in seeking the assumption of the Assigned Contracts (as defined in the APA) and their assignment to the Purchaser.

CC.    The Sale of the Purchased Assets outside a plan of reorganization pursuant to the APA neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Sale does not constitute a sub rosa plan.

DD.    Time is of the essence in consummating the Sale.  In order to maximize the value of the Purchased Assets it is essential that the Sale of the Purchased Assets occurs within the time constraints set forth in the APA.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The relief requested in the Sale Motion with respect to the Purchased Assets is hereby granted and approved in its entirety, and the Sale is hereby approved.

2.    All objections to the Sale Motion or the relief requested therein with respect to the Purchased Assets that have not been withdrawn, waived or settled, and all reservations of rights included in or related to such objections (whether written or oral), are hereby denied and overruled on the merits, with prejudice.

**Authorization and Approval of the
Sale and the APA**

3.    The APA and all transactions contemplated therein and in the Transaction Documents, and all of the terms and conditions contained in the foregoing, are hereby approved in all respects, and the Sale pursuant to the APA is hereby authorized under, *inter alia*, Sections 363(b) and (f) of the Bankruptcy Code.  The omission from this Sale Order of specific reference to any provision of the APA shall not impair or diminish the efficacy, propriety or approval of

any such provision, it being the intent of this Court that the APA is hereby authorized and approved in its entirety.

4.    The Sellers are authorized, but not directed, to assume the Assigned Contracts and to assign them to the Purchaser, subject to the Purchaser's rights and obligations under the APA.

5.    By the issuance of this Sale Order, the Sellers (including their officers, employees and agents) are hereby authorized, but not directed, to execute and deliver, consummate and implement, and empowered to take any and all actions necessary or appropriate immediately to (i) consummate and implement the Sale in accordance with the terms and conditions of the APA, the other Transaction Documents, and this Sale Order, (ii) fully perform their obligations under and comply with the terms of the APA and the other Transaction Documents, in each case in accordance with the terms and conditions thereof, (iii) take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets, or as may otherwise be necessary or appropriate for the performance of the Debtor's obligations under the APA and the other Transaction Documents and the consummation of the Sale, in the case of the foregoing clauses (i), (ii) and (iii), without further order of this Court.

### Transfer of the Purchased Assets

6.    Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, upon satisfaction (or waiver to the extent permitted by the APA) of the conditions to the Closing, the Purchased Assets shall be transferred to the Purchaser at the Closing, and such transfer shall constitute a legal, valid, binding and effective transfer of such Purchased Assets and shall be free and clear of all Encumbrances of any kind or nature whatsoever  (other than the Permitted Encumbrances), with all such Encumbrances released, terminated and discharged as to the Purchaser and the

Purchased Assets, and with all such Encumbrances (other than the Permitted Encumbrances) to

attach to the proceeds of the Sale in the order of their priority, with the same validity, force and

effect, if any, which they would then have against the Purchased Assets, subject to the Final DIP

Order or any defenses, counterclaims, rights of avoidance and rights under Sections 506(c) or

552(b)(1) of the Bankruptcy Code that the Sellers may have with respect thereto.  The Permitted

Encumbrances shall continue to encumber the Purchased Assets and they shall not attach or

otherwise encumber the proceeds of the Sale.

7.    The transfer of the Purchased Assets to the Purchaser pursuant to the APA shall

constitute a legal, valid and effective transfer, assignment and conveyance of the Purchased

Assets, and shall vest the Purchaser with all right, title (which shall be good, clear and

marketable) and interest of the Sellers in and to the Purchased Assets free and clear of all

Encumbrances (other than the Permitted Encumbrances).

8.    All Persons including, but not limited to, all debt security holders, equity security

holders, federal, state, or local governmental, tax, environmental and regulatory authorities or

agencies, lenders, trade and other creditors, holding any Encumbrances of any kind or nature

whatsoever (including Encumbrances based on any successor or transferee liability, other than

the Permitted Encumbrances) against or in any Debtor or the Purchased Assets (whether legal or

equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, now

existing or hereafter arising, senior or subordinated, accrued, determined, determinable or

otherwise), arising under or out of, in connection with, or in any way relating to, the Debtors, the

Purchased Assets, the operation of the Debtors' business prior to the Closing, or the transfer of

the Purchased Assets to the Purchaser, are hereby forever barred, estopped and permanently

enjoined from asserting, prosecuting or otherwise pursuing any Encumbrance (other than a

Permitted Encumbrance), in each case of any kind or nature whatsoever that any such Person had, has or may have against any Debtor (or their respective predecessors), the Purchased Assets, or any other assets or operations of the Debtors or any of the Debtors' predecessors or affiliates against the Purchaser, the Purchased Assets, or any other assets or operations of the Purchaser. No such Person shall assert against the Purchaser or any of their successors in interest any Encumbrance relating to or arising from the Purchased Assets (including the ownership thereof) or any liabilities calculable by reference to the Debtors or any of their predecessors or any of their respective assets or operations, other than with respect to any Permitted Encumbrances.

9.      All Persons are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Sellers to transfer the Purchased Assets to the Purchaser in accordance with the APA and this Sale Order. All Persons asserting possessory liens or in possession of some or all of the Purchased Assets are directed to surrender possession of such Purchased Assets to the Purchaser at the time of the Closing, and any such liens, to the extent valid, shall attach to the proceeds of the Sale, subject to the provisions of the Final DIP Order.

### Release of Encumbrances

10.      This Sale Order shall operate to release all Encumbrances in the Purchased Assets upon the occurrence of the Closing except with regard to the Permitted Encumbrances. At or prior to the Closing, and except as otherwise provided in this Sale Order as to the Debtors, each Person is authorized and directed to execute such documents and take all other actions as may be necessary or appropriate to evidence the release of its Encumbrances in the Purchased Assets, as such Encumbrances may have been recorded or may otherwise exist. If any Person that has filed any mortgages, deeds of trust, financing statements or other documents or agreements evidencing any Encumbrances in any of the Purchased Assets shall not have delivered to the Debtors prior to

the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases and/or other documents required to release all Encumbrances that the Person has with respect to any of the Purchased Assets, each of the Sellers and the Purchaser is hereby authorized, but not directed, to execute and file such statements, instruments, releases and other documents on behalf of the Person with respect to such Purchased Assets. Without limiting the effect of the foregoing, the Sellers and the Purchaser are hereby authorized, but not directed, to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances in the Purchased Assets. The foregoing notwithstanding, the provisions of this Sale Order authorizing the Sale free and clear of Encumbrances shall be self-executing, and notwithstanding the failure of the Sellers, the Purchaser or any other party to execute, file or obtain termination statements, instruments of satisfaction, releases, assignments, consents or other documents to effectuate, consummate and/or implement the provisions hereof or of the APA with respect to the Sale and the assignment of the Purchased Assets, all Encumbrances in the Purchased Assets (other than the Permitted Encumbrances) shall be deemed unconditionally released, discharged, terminated, divested, void and unenforceable upon the occurrence of the Closing.

11.     Following the Closing, no holder of any Encumbrances shall interfere with the Purchaser's title to, or use and enjoyment of, the Purchased Assets based on or related to any such Encumbrance, or based on any actions the Debtors may have taken or may in the future take in their Bankruptcy Cases.

## Assumption and Assignment of Assigned Contracts

12.    Subject to the terms of the Agreement and this Order and the occurrence of the

Closing Date, the assumption by the Debtors of the Assigned Contracts and the assignment of

such Contracts to the Purchaser, as provided for or contemplated by the APA, the Sale Motion

and the Contract Procedures, be, and hereby is, authorized and approved pursuant to sections 363

and 365 of the Bankruptcy Code.

13.    The Assigned Contracts shall be deemed valid and binding and in full force and

effect and assumed by the Debtors and assigned to the Purchaser at the Closing, the Sale Motion

and the Contract Procedures, pursuant to sections 363 and 365 of the Bankruptcy Code, subject

only to the payment of all Cure Costs.

14.    Upon the payment of the Cure Costs, in accordance with sections 363 and 365 of

the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and

interest of each Assigned Contract.

15.    Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, and except as

otherwise provided in this Order, the Purchaser shall immediately pay to the parties to any

Assigned Contracts the requisite Cure Costs, if any, set forth in the Notice of Possible

Assumption, Sale and Assignment of Certain Unexpired Leases and Executory Contracts and

Sale Hearing [Docket No. 135] and the supplemental notice thereto [Docket No. 218] (together

as the "Cure Notices") or as otherwise agreed to, as applicable, with respect to the assumption

and assignment of the Assigned Contract. The Cure Costs are hereby fixed at the amounts set

forth in the Cure Notices or the amounts determined on the record at the Sale Hearing, as the

case may be, and the non-Debtor counterparties to the Assigned Contracts are forever bound by

such Cure Costs and are hereby precluded from objecting to the Cure Costs (if any) relating to

such Assigned Contracts and the assumption and assignment of any Assigned Contract and

enjoined from taking any action against the Purchaser or the Purchased Assets with respect to

any claim for cure, or any other claim, under any Assigned Contract.

16.    All defaults, actual pecuniary losses (as defined in section 365(b)(1)(B) of the

Bankruptcy Code) or other obligations under the Assigned Contracts arising prior to the Closing

(without giving effect to any acceleration clauses or any default provisions of the kind specified

in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by the payment of the Cure

Costs, and the non-Debtor counterparties to such Contracts shall be forever barred and estopped

from asserting or claiming against the Debtors or the Purchaser that any additional amounts are

due or other defaults exist.

17.    Any provision in any Assigned Contract that purports to declare a breach, default,

or payment right as a result of an assignment or a change of control in respect of the Debtors is

unenforceable, and all such Assigned Contracts shall remain in full force and effect, subject only

to payment of the appropriate Cure Cost, if any.  No sections or provisions of any Assigned

Contract that purports to provide for additional payments, penalties, charges, or other financial

accommodations in favor of a non-Debtor third party to the Assigned Contracts shall have any

force and effect with respect to the transactions contemplated by the Agreement and assignments

authorized by this Order, and such provisions constitute unenforceable anti-assignment

provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable

under section 365(e) of the Bankruptcy Code and no assignment of any Assigned Contract

pursuant to the terms of the APA in any respect constitutes a default under any Assigned

Contract.  The non-Debtor counterparty to each Assigned Contract shall be deemed to have

consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, and the

Purchaser shall enjoy all of the rights and benefits under each such Assigned Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtor counterparty's written consent to the assumption or assignment thereof.

18.     Where the Debtors are unable to establish that a default exists under a Contract, the Cure Cost relating to such Contract shall be set at $0.00.

19.     The Purchaser has satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under the Assigned Contracts.

20.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assigned Contracts occurring on or after the Closing, pursuant to and in accordance with section 365(k) of the Bankruptcy Code.

21.     The non-Debtor counterparties to the Assigned Contracts shall be prohibited from charging any rent acceleration, assignment fees, increases or other fees to the Purchaser as a result of the assumption and assignment of the Assigned Contracts.

22.     The *Objection Of Mary Ann Stafford, Trustee Of The Fighting Dragon Trust, Dated May 8, 2002, To Motion To Assume And Assign Certain Unexpired Leases And Executory Contracts And To Sale Motion (As Applicable); Objection as to "Cure" Amount* [Docket No. 221] (the "Stafford Objection") and the *Complaint To Determine Validity, Priority, Or Extent Of Interest In Property, For Declaratory Judgment And Other Equitable Relief, Quiet Title, And For Damages For Breach Of Contract* [Docket No. 234] (the "Stafford Complaint") filed by Mary Ann Stafford, Trustee Of The Fighting Dragon Trust ("Stafford Trustee") are hereby fully and finally resolved as follows:

a) At the Closing of the Sale, the Sellers shall pay $100,000.00 out of the proceeds of the Sale to the Stafford Trustee in full and complete satisfaction of the Cure

Costs relating to the Stafford Lease and all rental and royalty obligations through October 31, 2012.

b)   The deadlines set forth in paragraph 4 of the Second Amendment (i) is extended through and including May 31, 2013 with respect to the two wells commenced by TVOG in July of 2012 (known as Claflin Well No. 22 and Charisma-Claflin Well No. 23) and (ii) is extended through and including September 30, 2013 with respect to the other five remaining wells; provided, however, that the Purchaser's obligation to pay the advanced royalty of $10,000 as set forth in the Stafford Lease shall also continue through September 2013. All other terms and conditions of the Stafford Lease will remain unchanged.

c)   The Stafford Trustee hereby consents to the Sellers assumption and assignment of the Stafford Lease to the Purchaser.

d)   Within five (5) days following the Closing, the Stafford Trustee shall take all such actions as are necessary to dismiss with prejudice the Stafford Complaint.

### Good Faith Purchaser

23.     The Purchaser is a purchaser in good faith of the Purchased Assets and is entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

24.     In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of Section 363(m) of the Bankruptcy Code in closing the Sale as contemplated by the APA and the other Transaction Documents, at any time after the entry of this Sale Order and, accordingly, such closing in the face of an appeal will not deprive the Purchaser of its status as a good faith purchaser. If the Sellers and the Purchaser consummate the Sale while an appeal of this Sale Order is pending, the Purchaser shall be entitled to rely upon the protections of Section 363(m) of the Bankruptcy Code, absent any stay pending appeal granted by a court of competent jurisdiction prior to such consummation. Pursuant to Section 363(m) of the Bankruptcy Code, the reversal or modification of this Sale Order or any authorization provided herein shall not affect the validity of the Sale to the Purchaser (except to the extent such authorization is duly stayed pending such appeal prior to consummation of the

Sale), and if any or all of the provisions of this Sale Order are hereafter reversed, modified or vacated by a subsequent order of this Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the APA or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal), and notwithstanding any reversal, modification or vacatur shall be governed in all respects by the original provisions of this Sale Order or the APA, as the case may be.

25.     The Sellers and the Purchaser have not engaged in any conduct that would cause or permit the Sale to be avoided, any amounts recovered or damages imposed, or costs, fees or expenses to be recovered, under Section 363(n) of the Bankruptcy Code.

### Obligations of Back-Up Bidder

26.     The Back-Up Bid is hereby Approved and is deemed open and irrevocable until the Closing of the APA.  The Sellers shall be authorized to consummate the transaction with the Back-Up Bidder without further order of the Bankruptcy Court.

27.     In the event that the Sellers consummate the transaction with the Back-Up Bidder, as set forth herein, the Back-Up Bidder shall have the same protections as the Purchaser as set forth in this Sale Order and shall acquire the Purchased Assets and assume the Assumed Liabilities in accordance with the Back-Up Bid and this Sale Order without further order of the Bankruptcy Court.  For the avoidance of doubt, upon the closing of the Back-Up Bid, every finding of fact and conclusion of law of this Sale Order shall apply to such Back-Up Bid and to the Back-Up Bidder.

## **Additional Provisions**

28.     From and after entry of this Sale Order, no Person shall take or cause to be taken any action that would adversely affect or interfere with the transfer of the Purchased Assets either to the Sellers prior to the Closing, for subsequent transfer to the Purchaser at the Closing, or to the Purchaser in accordance with the terms and conditions of the APA and this Sale Order.

29.     All Persons who are presently, or at any time hereafter prior to the transfer to the Purchaser, in possession of any Purchased Assets are hereby directed to surrender possession of such Purchased Assets either to the Sellers prior to the Closing, for subsequent transfer to the Purchaser at Closing, or to the Purchaser at the Closing (except to the extent the APA expressly provides otherwise).

30.     The terms and conditions of the APA and the other Transaction Documents, together with the terms and provisions of this Sale Order, shall be binding upon the Sellers, their affiliates, successors and assigns and their respective affiliates, agents, representatives, counsel and advisors, any trustee that may be appointed in these Bankruptcy Cases or in any cases under Chapter 7 of the Bankruptcy Code to which these cases may be converted, their estates, creditors, and equity holders, the Purchaser and any other affected third parties, all Persons asserting any claims against or interests in the Debtors' estates or any of the Purchased Assets and all other Persons, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other Persons who may be required by operation of law or by the duties of their office or contract to accept, file, register or otherwise record or

release any documents or instruments, or who may be required to report to or insure title or state of title in or to any of the Purchased Assets.

31.     Each and every federal, state and local governmental agency or department is hereby directed to accept any and all instruments and other documents necessary or appropriate to consummate the Sale, including without limitation, all instruments and other documents for recording in any governmental agency or department required to transfer to the Purchaser any and all licenses under the Sellers' ownership necessary for the operation of any Purchased Assets, and county and state offices wherein termination statements under the Uniform Commercial Code and/or mortgage releases are authorized to be filed.

32.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to Purchaser on account of the filing or pendency of these Bankruptcy Cases or the consummation of the transaction contemplated by the APA.

33.     As of the time of the Closing, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof, but subject to the terms of the Final DIP Order, shall be deemed amended or otherwise modified to the extent required to permit the consummation of the Sale.

34.     Any of the terms and conditions of the APA and the other Transaction Documents may be waived, modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court.

35.     This Court retains jurisdiction to (i) interpret, enforce and implement the terms and provisions of the APA and the other Transaction Documents, all amendments thereto and any waivers and consents thereunder; (ii) compel delivery of the Purchased Assets to the

Purchaser; (iii) resolve any disputes arising under or related to the APA or any other Transaction Documents; (iv) interpret, enforce and implement the provisions of this Sale Order; (v) resolve any disputes relating to the receipt, use, application or retention of the proceeds of the Sale and any liens or security interests thereon; and (vi) protect the Purchaser against all Encumbrances.

36.     Nothing contained in any plan of reorganization or liquidation confirmed in these Bankruptcy Cases or in any order of confirmation confirming any plan of reorganization or liquidation, nor any order dismissing the case or converting these cases to a Chapter 7 liquidation or any further order of this Court shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

37.     Nothing in this Sale Order or the APA releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Closing.

38.     In accordance with the Final DIP Order, all proceeds of the Sale of the Purchased Assets shall be paid to the Lender (as defined therein); provided, however, (1) the Prepetition Balance (as defined therein) shall not be due and payable upon the closing of the Sale, but shall be set aside in the Carve-Out Reserve (as defined therein); and (2) the payment of Sale proceeds to the Lender shall be without prejudice to the allocation rights of each of the Debtors in paragraph 15 of the Final DIP Order and without prejudice to the investigation and challenge rights of any Committee as provided in paragraph 19 of the Final DIP Order.  Further, any contrary provision of the APA or this Sale Order notwithstanding: no allocation of the purchase price for the Purchased Assets between the Purchaser and the Debtors shall be binding in any subsequent proceeding in this Court with respect to paragraph 15 of the Final DIP Order.

39.    No bulk sale or any similar law of any state or other jurisdiction shall apply in any way to the Sale and transactions contemplated by the APA.

40.    Any assumption, assignment, and or transfer of any interest in the Sellers' federal oil and gas lease(s) (the "Federal Lease") shall require the consent of the United States. Following the Closing, the Purchaser shall be required to abide by any decommissioning obligation and financial assurance requirements under the Federal Lease, as determined by the Department of the Interior of the United States and prior to the Closing, the Sellers shall abide by any such obligations and requirements.

41.    To the extent any provisions of this Order conflict with the terms and conditions of the APA, this Order shall govern and control.

42.    This Order and the APA shall be binding upon and govern the acts of all persons or entities, including without limitation, the Debtors, the Sellers, the Purchaser, and their respective successors and assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for any of the Debtors' estates or any trustee appointed in applicable chapter 7 cases, all creditors or equity holders of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Purchased Assets.

43.    The stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is hereby waived and this Sale Order shall be effective and enforceable immediately upon entry. Time is of the essence in closing the Sale, and the Sellers and the Purchaser intend to close the Sale as soon as practicable, pursuant to the terms of the APA.

44.    All of the provisions of this Sale Order are nonseverable and mutually dependent.

45.    This Sale Order is a final order pursuant to 28 U.S.C. § 158(a), and

notwithstanding Bankruptcy Rule 6004(h), the Bankruptcy Court expressly finds that there is no

just reason for delay in the implementation of this Sale Order and expressly directly directs the

entry thereof.

Dated:    Oct. 18    , 2012
Wilmington, Delaware

THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

**CERTIFICATE OF SERVICE**

I, David L. Finger, hereby certify that on this 10th day of September, 2014, a copy of the

foregoing document was served via first class mail, postage prepaid, on the below-listed counsel

of record:

William F. Taylor, Jr., Esq.
McCarter & English, LLP
405 N. King St., 8th fl.
Wilmington, DE  19801

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 N. Orange St., 7th floor
Wilmington, DE  19801-1186
(302) 573-2525

- 5 -

IRV #4847-5551-6190 v1